IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID SHULICK<br>and<br>CHERIE SHULICK | :<br>:<br>:<br>Plaintiffs, : | CIVIL ACTION<br><br>Civ. Action No.: 2-11-cv-01350-GP |
| vs. | :<br>: | |
| UNITED AIRLINES<br>And<br>US AIRWAYS, et al. | :<br>:<br>:<br>Defendants. : | |

## SECOND AMENDED COMPLAINT

Plaintiffs, David and Cherie Shulick, by and through their undersigned counsel, herein file this Second Amended Complaint against Defendants and in support thereof, aver as follows:

1.    Plaintiffs are David and Cherie Shulick, husband and wife, who reside in Lower Merion Township, Pennsylvania at 202 Righters Mill Road in Penn Valley, a subdivision of Montgomery County, Pennsylvania.

2.    Defendant, United Airlines ("United") is, upon information and belief, a corporation licensed and in the business of providing airline service and related services to consumers in the United States, and beyond, with a corporate headquarters in Chicago, Illinois.    United also maintains a website at www.united.com for purposes of communicating with consumers and prospective consumers, which includes, in pertinent part, the following representations, which were read and relied upon by the Plaintiffs prior to purchasing United's services:



**A message to our customers**

In the air and **on the ground**, online and **on the telephone, our customers have the right to expect — <u>to demand — respect, courtesy, fairness and honesty</u> from the airline they have selected for travel.**

At United, <u>**the only acceptable customer experience is one in which you arrive at your intended destination safely, comfortably and on time**</u>. **When events and obstacles beyond our control, such as severe weather or Air Traffic Control delays, prohibit us from achieving this standard, <u>we strive to minimize customer inconvenience however possible</u>.**

<u>**Our 12-point Customer Commitment, or customer service plan, outlines the ways in which we strive to keep our customers feeling relaxed, respected and rewarded both during and outside of normal flight operations.**</u>

Our Customer Commitment is a living document that is reviewed frequently and updated regularly to ensure it remains current, relevant and compelling.

**Our Customer Commitment**

1. Offer the lowest fare available

2. Notify customers of known delays, cancellations and diversions

3. Provide on-time baggage delivery

4. Provide a fair baggage liability limit

5. Allow reservations to be canceled

6. Provide prompt ticket refunds

7. Readily, capably and respectfully accommodate travelers with special needs

8. Meet customers' essential needs during long delays, diversions, misconnections or cancellations

9. Treat involuntarily denied boarding customers fairly and consistently

10. Disclose up-to-date travel itinerary, cancellation policies, frequent flyer rules and aircraft configuration to our customers

11. Work closely with our regional flying partners to deliver responsive customer service

12. Respond quickly, appropriately and courteously to customer questions and complaints

United's website repeatedly touts to consumers and prospective consumers it's reliable customer service related to all aspects of traveling stating that live telephonic representatives are available twenty four hours a day, seven days a week, when needed, calling them 'full service', and representing that United offers telephonic reservation support 24 hours per day, 7 days per week, and reliable baggage service when issues arise related thereto, as follows:

## BAGGAGE

<u>Please call our baggage service representatives at 1-800-221-6903 to report a claim.</u> Our representatives will provide you with a Missing Property Questionnaire which can be completed and mailed to our Central Baggage Service Office. You may also request this form <u>via our website</u>. Please retain your passenger ticket receipt, claim check, and, if applicable, evidence of Transportation Security Administration (TSA) inspection.

## RESERVATIONS

<u>Our full-service Reservations Sales agents will assist you with all your travel planning needs</u>. Should you decide to purchase tickets, the total price will include a $25 call center fee per ticket ($30 at the airport). This fee does not apply to government and military fares, when reservations are purchased on united.com, or for 1K and Global Services members.

Phone support

For          domestic          travel
1-800-United-1                  (1-800-864-8331)
Available 24 hours a day, 7 days a week

## REFUNDS

<u>Refunds will be considered for nonrefundable tickets only in the case of extenuating circumstances, such as a flight cancellation or significant schedule change made by United</u>.

## TICKET ALTERATIONS

<u>In cases in which United has issued a travel waiver (such as weather disruptions), visit EasyCheck-inOnline</u> to see whether United may have already rebooked you on another flight. **You may also**

**contact our reservations staff at <u>1 800 UNITED 1</u> <u>(800-864-8331).</u>**

<u>If you purchased your ticket at the airport</u>, by calling United Reservations, or if your ticket is ineligible to be changed or refunded on united.com, <u>contact United Reservations at 1-800-United-1 (1-800-864-8331) or United worldwide contacts</u>.

As alleged herein, all of these representations were false, misleading, and when the Shulick's were stranded in Aspen Colorado with their young daughters, Julia, age 5, and Skylar, age 3, United simply played a voicemail message that stated: "...due to weather, all agents are busy and you must hold...." And when the Shulick's repeatedly held as required, United would simply disconnect the call at the 40+/- minute mark – leaving the Shulick's with no ability to communicate with United as previously represented.

    3.    Defendant, US Airways ("US Air") is, upon information and belief, a corporation licensed to provide commercial airline services in the United States, with a corporate address of 400 E. Sky Harbor Boulevard in Phoenix, Arizona, and maintains a website at www.usairways.com and wherein US Air makes the following representations, in pertinent part:

<u>**Customer service plans**</u>
**Customer service has always been a priority at US Airways**, and we are committed to making every flight count for our valued customers.



Our promise to you:

**The safety and satisfaction of our customers is a top priority for our airline.** Customers First is the result of a joint effort of the airline industry, the US Congress, and the US Department of Transportation to address the key service elements that affect our customers.

## DELAYS, CANCELLATIONS AND DIVERSIONS

**When unforeseen problems occur and flights are delayed, canceled or diverted, US Airways will make every effort to notify customers** at the airport and onboard an affected aircraft, **in a timely and accurate manner**, with the best available information regarding known delays, cancellations and diversions.

**US Airways agents make every attempt to contact customers when their flight cancels prior to day of departure.** The Reservations Assistance Department rebooks customers and handles callbacks for customers prior to the day of departure. It is recommended that all customers reconfirm their itinerary 24 to 48 hours prior to departure.

In the event of a flight cancellation, **US Airways will do everything possible to re-accommodate customers on the next US Airways flight,** providing space is available. Depending on the type of ticket purchased, the reason for the flight irregularity and availability, in most instances **US Airways will also rebook customers on other airlines**. US Airways will communicate to customers via the public address system the reason for the cancellation and alternatives available.

## SERVICES TO MITIGATE PASSENGER INCONVENIENCE FROM CANCELLATIONS

**When a US Airways flight on which the customer is being transported is canceled or causes a missed connection**, due to reasons within the control of US Airways, creating an overnight stay, for the customer, **US Airways will provide one night's lodging**.

    **US Airways will pay for:**
        -Hotel room
        -Meal(s)
        -Ground transportation (if not provided by the hotel)
        -Passengers without baggage will be reimbursed upon presentation of receipts for reasonable incidentals such as toiletries needed until they are reunited with their baggage

## BAGGAGE

**US Airways makes every reasonable effort to deliver bags in a timely manner** (within 24 hours) and will attempt to contact any customer.

An example of a situation that may prevent baggage from being returned within 24 hours is when the bag tag is missing and the identification on the outside of the checked baggage does not contain a phone number.

When customers have made a claim within four hours of flight arrival and baggage is delayed for 24 hours or longer after making a claim, **US Airways provides our customers interim expenses to purchase toiletries and clothing**. The following guidelines apply: (1) Reimbursement for reasonable interim expenses, such as toiletries will

be considered upon submission of receipts; (2) Interim expense allowance is paid per ticketed customer, not per bag

4.      Jurisdiction is vested in this Court pursuant to 28 U.S.C. §1332(a)(1) in that the Plaintiffs and Defendants are residents, are incorporated in or have their primary place of business in different states.  Venue for this action is properly laid in the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.C.S. §1391(c), as the Defendants are corporations deemed to reside in any judicial district in which they are subject to personal jurisdiction.  The amount in controversy is in excess of $75,000.

## FACTUAL BACKGROUND

5.      Based solely on United's advertisements, slogan and representations, including specifically the representations on the United Website that are referenced herein and above, the Shulicks purchased tickets from Defendant United Airlines for the sum of $2,883.20 for Flight No. 323, leaving Philadelphia, PA on December 21, 2010, travelling to Aspen, CO with a return flight on December 26, 2010.  A true and correct copy of the confirmation and related information is attached hereto as Exhibit "A".

6.      Based solely on US Airways representations, including specifically the representations on the website that are referenced herein and above, the Shulicks also purchased tickets from Defendant US Airways to travel from Philadelphia to Orlando for a non-refundable New Year's Disney cruise for Cherie Shulick's 40th birthday, disembarking from Port Canaveral, FL on December 29, 2010 and returning on January 3, 2011, said Flight No.'s being 987 and 1582 respectively, for a total sum of $4,125.20. A true and correct copy of the confirmation and related information is attached hereto as Exhibit "B".

7.     On or about December 25, 2010, Defendant United Airlines unilaterally cancelled the return flight from Aspen, Colorado previously paid for by Plaintiffs, **without any notice whatsoever to Plaintiffs, which was explicitly promised on their website, via email or cell phone, both of which contact means were available and previously provided to Defendant United Airlines**. This left the Shulicks stranded in Aspen, CO and most significantly, **United did not pick up and answer their customer service or direct phone calls once, as they had promised on their website. The Shulicks called from Aspen, held for over thirty (40) minutes and were continually disconnected, re-directed and given absolutely no information, and spent several hours in their hotel room calling on the hotel line and on their cellular phones, as per the United Website.**

8.     As a result, the Shulicks, who had to leave the Viceroy Hotel who was fully booked with other guests, spent significant money in futile calls to United, were unable to continue their hotel accommodations in Aspen, and were forced to find whatever rental car was available to travel from Aspen, CO to Denver, CO. Accordingly, the Shulicks located one of the last vehicles at the local Hertz Rental Car agency at the Aspen airport, were forced to incur a one-way charge, and had to pay the sum of $1,025.21 through Hertz Rental Car, and drove for upwards of four hours from Aspen, CO to Denver, CO with their young children to Denver where they could go to the Denver Airport and speak directly with airport airline agents.

9.     Unable to get a flight of any kind on either of the defendant airlines, and unable to get help in the Denver airport as all agents were 'unavailable' and the Shulick's were directed to the website or the 800 number that was not working as represented by

Defendants, the Shulick's were forced to purchase hotel accommodations for themselves and their two small children, Julia (age 5) and Skylar (age 3). The Shulick's found a room, last minute, and expended the total sum of $850.43, for the night of December 27, 2010 in Denver, CO and then continued to frantically try to book whatever return flight they could find via the internet, as United's phone systems were completely unprepared for the foreseeable overload of calls and crashed repeatedly, repeatedly stating "...all agents are busy and unavailable, please hold..." and then unilaterally hung up after 40 minutes of holding.

      10.   **The Shulicks then were unable, for a period of +/-36 hours to have any communication, whatsoever, with Defendant United, whose website then crashed and stopped allowing booking, and, who, despite touting they provide quality customer service for twenty four hours a day, seven days a week, had no working website and no working telephone lines.** In fact, again **multiple calls were placed to defendant airlines, whose telephones again would place people on hold for upwards of 45 minutes and, after waiting 45 minutes, simply disconnected the case.** As to the result, the Shulicks were forced to book whatever airline flights to Philadelphia they could find and did so – and David Shulick booked United Flight No. 0340 for the sum of $1,732.36 for the date of December 28, 2010 from Denver, CO to Philadelphia, PA on his Apple Ipad. However, this would only get the Shulicks into Philadelphia after midnight on December 29, 2010 – leaving no time to sleep or pack for the pre-paid Cruise, for which flights were leaving Philadelphia International Airport early am on December 29, 2010, and would wreak havoc with the food, medicine and sleep schedules for their young daughters, Julia and Skylar, ages 5 and 3 respectively.

11.    However, at approximately 1:00 a.m. on December 26, 2010, Cherie Shulick was able to finally, after trying for over 48 hours, reach a live United agent who booked the Shulicks on United Flight No. 740 from Denver, CO to New Orleans, LA, connecting to US Airways Flight No. 1454 from New Orleans, LA to Philadelphia at a cost of $2,517.66 so the Shulicks could get home and make the cruise, and **United assured Cherie Shulick that the connection was fully confirmed and PHL was operating, as Cherie Shulick specifically asked for said confirmation understanding the weather issues at the PHL International Airport.**

12.    The Shulicks then checked out of the hotel in Denver the following morning and travelled to the Denver, CO airport, at which time they boarded United Flight No. 740, travelling towards New Orleans, LA.  Nevertheless, before the airplane even approached the gate, **US Airways unilaterally, without any notice whatsoever, cancelled the connecting flight, leaving the Shulicks with all of their luggage and medicine checked in and unavailable to them for themselves and their children, despite being stranded at the New Orleans, Louisiana Airport.**

13.    Accordingly, the Shulicks were forced to travel from the New Orleans, LA airport by rental vehicle for the sum of $110.00 and stay overnight at a hotel in New Orleans, LA for the sum of $1,579.45, said charges included 3 hour telephone conferences over the hotel phone to Philadelphia as David T. Shulick, Esquire was serving on Governor Corbett's Education Transition Team, was a Subcommittee Chairman, and had a large report due on December 28, 2010.  Significantly, the Shulick's were left with no choice but to travel directly from New Orleans to Orlando, FL on Flight No. 236 on Southwest Airlines for the sum of $922.36 and, stay at a hotel in Orlando for

the sum of $1,772.72 and continue working on the Transition Report, and pack remotely with the assistance of people in their Pennsylvania home, allowing them to make the Cruise in Orlando, which was also being attended by their parents for Cherie's 40th Birthday, who then met them in Orlando, Florida.  Significantly, neither United nor US Air could provide alternate flights for the Shulicks, nor did the airlines agents offer to try to do so, and the Southwest flight was booked in the New Orleans Airport via direct telephone call from David T. Shulick.

14.     Outrageously, the United employee in New Orleans who was African American, called Cherie Shulick a 'honkey' and refused all help with retrieval of the Shulick family baggage which United had already shipped off to Philadelphia, and this employee called the New Orleans Police on Cherie Shulick forcing David Shulick to video this employee.  The Shulicks were told by a TSA worker in New Orleans and a US Air employee named "Nettie" that this African American worker had repeatedly acted in this discriminatory manner towards Caucasian customers, refusing to assist customers like the Shulicks in any way shape or form and, instead, openly and publicly harassing them.

15.     As of today – the Shulick's have all such proof of this discriminatory conduct in a public accommodation – and have turned the employee and the video proof of the conduct into United Corporate, who has done absolutely nothing to prevent this pattern of outrageous discrimination and abuse of United customers.

16.     United has steadfastly refused to fire or reprimand the employee despite the Shulicks' proof of her conduct, refusing to engage in any meaningful discussions with the Shulicks and forcing the Shulicks to litigate this matter.

17.     Following this outrageous, unprovoked and inappropriate conduct, thankfully, a porter at the New Orleans airport saw Mrs. Shulick and her children crying, and offered to help, and dispatched Staff to go and pull the Shulick luggage so they would have their medication while they were left stranded in New Orleans while the United Baggage Agent further harassed the Shulicks, as alleged herein.

18.     Adding insult to injury, Defendant US Airways then unilaterally cancelled the Shulicks return flights on <u>January 3, 2011</u>, previously booked and paid for, returning them from Orlando back to Philadelphia, without any notice to the Shulicks, once again forcing the Shulicks to frantically re-book the flight, **hold for over one and a half hours from the cruise ship** to get the matter straightened out and be seated separately from their children, ages 3 and 5, despite having knowledge that the only reason the Shulick's did not take the outbound flight as originally booked was the US Air and United cancellation of the New Orleans to Philadelphia flight as previously alleged.

19.     As a direct and proximate result of Defendant United's conduct, the Shulicks sustained the following monetary damages:

a.     $2,883.20 paid for Flight No. 323;

b.     $1,025.21 for a rental car;

c.     $850.43 for the Denver, CO hotel;

d.     $1,732.36 for United Flight No. 0340;

e.     $2,517.66 for Flight No. 740 connecting to US Air Flight No. 1454;

f.     $110.00 for transportation from the New Orleans Airport to the hotel;

g.    $1,579.45 for emergency accommodations in New Orleans, LA;

h.    $922.36 for Southwest Flight No. 236; and

i.    $1,772.72 for emergency accommodations in Orlando, FL;

The total amount for these damages is $13,393.39. True and correct copies of proof for the aforesaid are attached hereto and incorporated herein as Exhibit "C".

20.    As a direct and proximate result of Defendant US Air's conduct, the Shulicks sustained the following damages:

a.    $4,125.20 for unilaterally cancelling Flight No. 1582 and for not cancelling the December 29, 2010 outbound flight.

21.    All damages referenced in above and hereinafter against United Airline are applicable to US Air to the extent that United proves that US Air was the cause of said damage.

## COUNT I – CONSUMER FRAUD AND VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1, et. seq.)

22.    Plaintiffs hereby incorporate paragraphs one (1) through twenty-one (21) as though the same were set forth herein at length.

23.    The Shulicks are "consumers" as that term is defined in the Pennsylvania Unfair Trade Practices Act, 73 PS 201.1 *et seq.*

24.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law defines "unfair methods of competition" and "unfair or deceptive acts or practices" as including:

> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
> . . .

(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

. . .

(xxi) Engaging in any other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding.

73 P.S. § 201-2(4).

25.     As part of the transactions between Defendant Airlines and the Shulicks, the Defendant Airlines represented that they were reliable, high quality airlines which make particular guarantees, orally and in writing, on their website, to the Shulicks regarding the quality of their customer services, as described above, and that the Shulicks would be treated with respect, courtesy, fairness and honesty and that safety and satisfaction is the Defendant Airlines top priority.

26.     The services of Defendant Airlines were sold to the Shulicks through multiple calls to and from their home, rendering all transactions subject to the Rescission requirements of 73 PS § 201.1, et. seq., which entitles the Shulicks to rescind all said transactions with Defendant Airlines because Defendant Airlines have never notified the Shulicks this is in addition to the Shulicks rights and Rescissions violations of the aforesaid statute by making misleading,, deceptive, and or confusing representations about their services, as outlined herein, all clearly within the scope of the Consumer Fraud Act, entitled the Shulicks to rescind all such transactions to the extent that the Defendant Airlines made any deceptive, confusing or misleading statements during the sales process and/or failed to provide a Notice of Rescission.

27.     Defendant Airlines engaged the Plaintiffs through a series of false advertisements, promises and commitments that were completely deceiving and misleading in both their form and content.

28.     These deceiving and misleading statements, made in violation of the Consumer Fraud Act, and intended purely to engage and solicit the Shulicks business as consumers, each of which were deceptive confusing and misleading as proven by what the Shulicks experienced in Colorado, Louisiana and elsewhere as outlined herein, proving that each of these representations were false, deceptive, and misleading:

a.     Customers have the right to expect – to demand – respect, courtesy, fairness and honesty and that safety and satisfaction is their top priority;

b.     That the only acceptable customer experience is one in which you arrive at your intended destination safely, comfortably and on time;

c.     That they strive to minimize customer inconvenience however possible by offering and maintaining twenty-four hour, seven day a week customer service representatives and phone lines, that are operable, to assist with all matters related to travel including but not limited to reservations, refunds, ticket alternations and information related to scheduled flights;

d.     That they will make every effort to deliver bags in a timely manner, will provide reimbursement in the event of substantial delays in baggage arriving and that baggage service representatives are available twenty four hours a day, seven days a week via their website, customer services telephones and live employees at the airport;

      e.     That they offer refunds in the case of extenuating circumstances, such as flight cancellation or significant schedule changes;

      f.     That they will make EVERY effort to notify customers at or before they arrive at the airport of any delays, cancellations or diversions of flights in a timely and accurate manner and will provide CORRECT information to passengers;

      g.     That they will do EVERYTHING possible to re-accommodate passengers and assist in the booking of hotels and transportation in the event travel is not possible;

      h.     Advising that they would be providing airline service on specific dates and times, charging credit cards owned by Plaintiffs for said services, and then failing, without any notice whatsoever, to provide the services previously paid for.

      i.     Advising they would provide prompt notice in the event of any cancellations.

29.     The Shulicks, before they agreed and decided to expend hundreds and or thousands of dollars with Defendant Airline, and before they placed themselves, their two young children and their luggage in the custody and control of Defendant Airlines were mislead as a result of false representations outline herein and as a result, the Defendant Airlines conduct proved that:

      a.     They did not have sufficient, competent and reliable staffing to handle the volume of the calls, to provide accurate information or to assist customers, like the Shulicks, with difficulties the Airlines created and that instead, the Shulicks would spend hours on their personal and hotel phones, expending exponential dollars waiting on

hold for hours at a time only to be unilaterally disconnected without ever once speaking
to a representative;

        b.     That they did not have the technological capacity in any form
whatsoever to handle calls, re-route calls, inform customers of the delays, cancellations
and diversions as promised or to maintain a working and functional website and instead
that the Shulicks would not be able to check the status of their flights, rebook or alter
tickets or gather any pertinent information off the website which was continually down
due to traffic overload. Defendant Airline's phone systems were completely unprepared
for the foreseeable overload of calls and crashed repeatedly stating "...all agents are busy
and unavailable, please hold..." and then unilaterally hung up after 40 minutes of
holding.

        c.     That not only was it likely that, in the event of weather delays,
their baggage would be completely lost, leaving them stranded without medicine and
other necessities, but that the Shulicks would never be able to reach, despite +/- ten
attempts, to speak to a representative via the phone despite the 24/7 guarantee and,
moreover, that not a single live baggage representative would make any effort to assist
them and would, instead, verbally and racially assault them.

     30.     In fact, every single representation made by Defendant Airlines was
deceptive, creating the likelihood of confusion and misunderstanding. Each of these
representations were made to the Shulicks before they purchased the service from
Defendant Airlines. Once the sale was completed over the phone between the Shulicks
and Defendant Airlines, their obligation under 73 P.S. § 201-1, et. seq., triggered to

notify the Shulicks that the three day right by which the Shulicks could rescind had begun. No such notification was given and, accordingly, that period never began.

     a.     That when foreseeable weather events occurred, which def airlines absolutely and unequivocally should have expected as weather related interruptions occurred regularly in the United States airport system, the airlines wholly failed to provide "courtesy, fairness and honesty"; "safety and satisfaction"; "a customer experience where the Shulicks arrived comfortably and on time"; "minimal customer inconvenience"; "a 24 hour 7 day a week customer service representation and working phone lines"; "the delivery of bags in a timely manner"; and " reimbursement in the event of substantial delays… or refunds in the case of extenuating circumstances such as flight changes…"

     31.     When the Shulicks finally returned home, they demanded rescission.

     32.     Defendant Airlines failed and refused the Shulicks' demand for rescission or to make the Shulicks whole and, as a result, the Shulicks were forced to file litigation and incur additional attorney's fees and costs, which continue to accrue until such time as the matter is resolved by way of settlement or verdict.

## COUNT II – NEGLIGENT MISREPRESENTATION AGAINST DEFENDANT AIRLINES

     33.     Plaintiffs hereby incorporate paragraphs one (1) through thirty two (32) as though the same were set forth herein at length.

     34.     The misrepresentations made by Defendant Airlines were material to the transactions, in that Plaintiffs relied upon Defendants to fully investigate matters related to their travel before disbursing information to them and before making these representations on their websites. Defendant Airlines had notice of the possibility of poor

weather and did not, at any point, make any effort to ensure their duty to the Shulicks was satisfied. Defendants negligently misrepresented, at all points before, during and after the transactions with the Shulicks that as a direct and proximate result, the Shulicks have suffered damages and continue to suffer damages and request relief that is owed to them under 73 P.S. § 201.1, et seq.:

    a.    Customers have the right to expect – to demand – respect, courtesy, fairness and honesty and that safety and satisfaction is their top priority;

    b.    That the only acceptable customer experience is one in which you arrive at your intended destination safely, comfortably and on time;

    c.    That they strive to minimize customer inconvenience however possible by offering and maintaining twenty-four hour, seven day a week customer service representatives and phone lines, that are operable, to assist with all matters related to travel including but not limited to reservations, refunds, ticket alternations and information related to scheduled flights;

    d.    That they will make every effort to deliver bags in a timely manner, will provide reimbursement in the event of substantial delays in baggage arriving and that baggage service representatives are available twenty four hours a day, seven days a week via their website, customer services telephones and live employees at the airport;

    e.    That they offer refunds in the case of extenuating circumstances, such as flight cancellation or significant schedule changes;

f.    That they will make EVERY effort to notify customers at or before they arrive at the airport of any delays, cancellations or diversions of flights in a timely and accurate manner and will provide CORRECT information to passengers;

g.    That they will do EVERYTHING possible to re-accommodate passengers and assist in the booking of hotels and transportation in the event travel is not possible;

f.    That they would properly advise any risk that connecting flights would be canceled or re-routed to ensure the proper delivery of baggage and the ability of the Shulicks to make their destination as planned;

35.    In reality, however, as described in Counts I and II, all of these statements were negligently misrepresented, and in fact, the following was true:

a.    Defendant Airlines would unilaterally cancel, delay or divert flights, without any notice whatsoever to Plaintiffs via email or cell phone, both of which contact means were available and previously provided to Defendant United Airlines - notice which was explicitly represented and promised on their website and by sales representatives ,

b.    Defendant Airlines would not pick up and answer their customer service or direct phone calls once, as they had promised on their website, despite knowing that the consumers had been stranded and left to fend for themselves. The Shulicks called from Aspen, held for over thirty (40) minutes and were continually disconnected, re-directed and given absolutely no information, and spent several hours in their hotel room calling on the hotel line and on their cellular phones, as per the Defendant Airline's websites. Defendant Airlines simply played a voicemail message

that stated: "...due to weather, all agents are busy and you must hold...." And when the Shulick's repeatedly held as required, United would simply disconnect the call at the 40+/- minute mark – leaving the Shulick's with no ability to communicate with the airlines as previously represented;

    c.    That at all times, Defendant Airline representatives were "unavailable" to assist in any manner shape or form both electronically and in person;

    d.    That Defendant Airline representatives would assure Cherie Shulick that connections were fully confirmed and that PHL was operating without so much as looking into the matter to provide clear assurance that those representations were in fact true;

    e.    That baggage would be complete lost, re-directed and on-board connecting flights for which the Shulicks were unable to board based on Defendant Airlines negligent management of said flights, the weather conditions and the services they represented as maintaining for consumer support - neither United nor US Air could provide alternate flights for the Shulicks, nor did the airlines agents offer to try to do so,

36.    These negligent representations by Defendant Airlines engaged the Shulicks and created a duty between the airlines and the Shulicks – a duty which was breached and was the proximate cause of the harm which led the Shulicks to suffer all damages described herein.

## COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

37.    Plaintiffs hereby incorporate paragraphs one (1) through thirty six (36) as though the same were set forth herein at length.

38.    The Shulicks were unable, for a period of +/-36 hours to have any communication, whatsoever, with Defendant airlines, whose websites went down, and, who, despite touting they provide quality customer service, had no working website and no working telephone lines.  Multiple calls were placed to Defendant airlines, whose telephones would place people on hold for upwards of 45 minutes at a time and, after waiting 45 minutes, simply disconnected the case, forcing the Shulicks to frantically re-book the flight, hold for over one and a half hours to get the matter straightened out and be seated separately from their children, ages 3 and 5.

39.    Outrageously, a United employee, who was African American, in New Orleans, acting within the course and scope of her employment, not only outright refused to assist the Shulicks in locating and retrieving their baggage, which United had already shipped off to Philadelphia, but turned to Cherie Shulick, who is Caucasian, and called her a 'honkey.'

40.    The Shulicks learned from a TSA worker and a US Airways employee named "Nettie", that this United worker had repeatedly used this term toward Caucasian customers and that Defendant United had all prior notice of her conduct and refused to take any form of disciplinary action despite this clear notice.

41.    After this racially discriminating and disturbing slur, made during an extremely stressful incident caused by Defendant Airlines, this same employee

unexplainably called the New Orleans Police on Cherie Shulick, who was merely attempting to gather the information promised by United Airlines and to secure a safe transportation plan for her family and children, who had gone without sleep or medication for nearly forty-eight hours.

42.     As Cherie Shulick and her children stood crying and pleaded for this United worker to assist them so that they could find their luggage and retrieve their medicine, the United employee stood before them laughing, smirking and smiling – enjoying every single minute of their pain and suffering which she and United had caused.

43.     The Shulicks endured severe emotional distress immediately following this encounter, which occurred subsequent to the multiple and continuous negligent acts of the Defendant Airlines, as mentioned in Count III, suffered severe physical manifestations thereof, including migraine headaches, nausea, loss of sleep and severe anxiety over the incident.

## COUNT IV - SHULICK v. UNITED
## VIOLATION OF TITLE II: DISCRIMINATION – PUBLIC ACCOMODATIONS

44.     Plaintiffs hereby incorporate paragraphs one (1) through forty three (43) as though the same were set forth herein at length.

45.     Title II prohibits discrimination on the ground of race or color and provides that all persons are entitled to full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation whose operations affect interstate commerce. Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.*

46.     Outrageously, a United employee, who was African American, in New Orleans, where the Shulicks were once again stranded, called Cherie Shulick, who is Caucasian, a 'honkey' and refused all help with retrieval of the Shulick family baggage which United had already shipped off to Philadelphia based purely on the fact that Cherie was a Caucasian woman.

47.     After this racially discriminating slur, this same employee called the New Orleans Police on Cherie Shulick, who was merely attempting to gather the information promised by United Airlines and to secure a safe transportation plan for her family and children, who had gone without sleep or medication for nearly forty-eight hours. In particular, as to the video tape by Plaintiff Daivd T. Shulick,, said employee and her "friend", the assigned New Orleans police man in the 9th Parish whose duty area is the United Baggage Airport area, came to the aid of said employee and furthered her illegal and outrageous conduct by standing next to her and threatening David and Cherie Shulick "you won't like what jails look like down here in Louisianan- move on and don't worry about your bags and forget about what happened and I strongly suggest you destroy that video because down here in Louisiana we do things differently than up in the north where you're from".

48.     But for a porter at the New Orleans airport who saw Mrs. Shulick and her children crying after this racially discriminatory remark, and offered to help, the Shulicks would have been without their luggage and medication once again while they were left stranded in New Orleans.

49.     The Shulicks were then told by a TSA worker AND a US Air employee, "Nettie", that this United employed regularly made similar discriminatory remarks to

United customers, refusing them all forms of service and instead harassing and belittling them. Accordingly, Defendant United has been on notice prior to the incident with the Shulicks that this employee described above in paragraph forty-six (46), repeatedly and regularly violated Title II.

50.     David Shulick was then forced to video this employee – and as of today – the Shulick's have all such proof – and turned the employee and the video proof into United Corporate, who has done nothing to prevent this pattern of outrageous discrimination and abuse of United customers. United has steadfastly refused to engage in any meaningful discussion and has refused to fire or, at the very least, reprimand this employee for this documented, undisputable conduct. Plaintiff demanded injunctive relief so that future passengers and consumers would not suffer the same violation of federal law by said United employee and United refused to confirm or grant said request.

51.     Under Title II, Plaintiffs are entitled to injunctive remedies, reasonable attorney fees and costs and whatever relief this Court deems appropriate. Plaintiffs have demanded injunctive relief and Defendant United has failed and refused to comply to both, protect the public from foreseeable treatments by said employee who has, allegedly, repeatedly and regularly engaged in this illegal conduct towards other Caucasian passengers taking advantage of her relationship with the New Orleans Louisiana police assigned to the New Orleans Louisiana Airport and her permanent removal from said public facility is demanded.

**WHEREFORE,** Plaintiffs David and Cherie Shulick respectfully request this Honorable Court to enter judgment, jointly and severally, as follows: damages in the amount of $52,555.17 (17,518.39 trebled), plus attorney's fees and costs, plus punitive

damages regarding Count I; an amount in excess of $125,000 for damages and punitive damages regarding Counts II and III; an injunction ordering United to forthwith terminate the New Orleans baggage employee referenced in Count IV plus attorney's fees and costs, and such other relief as this Court deems just and equitable.

SHULICK LAW OFFICES

DAVID T. SHULICK, ESQUIRE
100 N. 18th Street
Two Logan Square, Suite1900
Philadelphia, PA 19103
(215) 988-5488
david@shulicklawoffices.com

Dated: 4/14/11

## CERTIFICATE OF SERVICE

I HEREBY STATE THAT THE ANNEXED PLEADINGS WERE SERVED ON ALL COUNSEL OF RECORD AS OF THE DATE SET FORTH BELOW BY EITHER U.S. MAIL, FIRST CLASS, POSTAGE PREPAID, EMAIL FEDERAL EXPRESS OR FACSIMILE WITH TRANSMISSION COMPLETED CONFIRMED.

Michael J. Soska, Jr, Esquire
Post & Schell, P.C.
Four Penn Center, 1600 JFK Boulevard
Philadelphia, PA 19103

Sara Anderson Frey, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

**SHULICK LAW OFFICES**

**DAVID T. SHULICK, ESQUIRE**
100 N. 18th Street
Two Logan Square, Suite1900
Philadelphia, PA 19103
(215) 988-5488
david@shulicklawoffices.com

Date: 4/14/11

# VERIFICATION

I, DAVID T. SHULICK, the undersigned, verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief; and that the foregoing statements are made subject to the penalties of 18 Pa. C.S.A. ' 4909 relating to unsworn falsification to authorities.

DAVID T. SHULICK, ESQUIRE

Dated: 4|14|11